# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-00786-SCT

*CORA SANDERS a/k/a CORA LEE SANDERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/16/1995 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BELINDA J. STEVENS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-12/13/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/3/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶ 1. Cora Sanders appeals her conviction for capital murder and her sentence of life imprisonment in the custody of the Mississippi Department of Corrections. Finding no error in the proceedings below, we affirm the judgment of the trial court.

## FACTS

¶2. In her testimony, the prosecution's witness, Melissa Moore ("Moore"), stated that she and O.D. Winford ("Winford") arranged to meet at his house in order to exchange sex for money. Upon arriving at the house, Moore found the door partially open and saw what appeared to be clothing lying on the floor. After calling Winford's name a few times, Moore ran to the neighbor's house and asked them to call the police. Moore testified that Winford always carried money in his wallet.

¶3. Subsequently, Officer John Abel ("Abel"), an investigator with the Yazoo City Police Department, arrived at the Winford residence. Abel found Winford's body face down on the floor with a two-by-four lying across his legs. This two-by-four appeared to come from the back door entrance of the house, where it blocked the door from being opened. There were groceries and a set of keys scattered near the body and tools were standing in the corner near the victim. Winford's pockets were also turned inside out.

¶4. Searching for an entry point, Abel found a hole in the bedroom where the floorboards and linoleum were kicked upwards. Inside this hole and underneath the house, Abel discovered a shotgun lying on the ground. Checking the outer perimeter of the house, Abel found another hole in the underpinning of the house, and also discovered partial footprints and knee prints near that hole.

¶5. Two days after the discovery of the body, and after the pathologist informed Abel of lacerations on Winford's body that may have been caused by a metal or wooden object, Abel returned to the crime scene with Detective Robert Adams ("Adams") of the Yazoo City Police Department to search for more evidence. Adams found what appeared to be blood, hair and possible body tissue on the tools that were left at the crime scene and took the tools to be processed at the crime lab. The lab did not find any prints on the tools or the shotgun. Winford's blood, however, was discovered on the tools. The police department withheld information regarding the cause of Winford's death and the use of the tools during the assault from the public.

¶6. The police department did not establish any further leads in the investigation until April of 1993. At that time, Curtis Myles ("Myles"), an inmate, requested to speak to Detective Adams. After discovering what Myles wanted to talk to him about, Adams informed Officer Abel that he also should listen to that information. In a taped statement, Myles informed the detectives that he had obtained a Smith and Wesson .32 caliber pistol. The record is unclear to other information Myles gave the detectives, but it appears that he insinuated a connection between the weapon and Winford's death. The detectives recovered the weapon and subsequently issued a warrant for the arrest of Cora Sanders ("Sanders") and other individuals.

¶7. Initially, after being arrested, Sanders stated that she knew nothing about Winford's death. Adams questioned Sanders again two days later and in this interrogation Sanders stated that she accidentally shot Winford. In his testimony, Adams alleged that Sanders stated that she was at the neighborhood store with "Boochie, Dorothy Taylor, when David Littleton ("Littleton") and Fat Rat, Melissa Moore, came up and said they needed some money; let's go to O.D.'s." The group went to Winford's house, and Littleton opened the back door for them. Dorothy Taylor went down the street and Littleton, Moore and Sanders went into the house to wait for Winford. Littleton had a white stick, and Sanders had a gun. Sanders allegedly stated that when Littleton hit Winford with the stick, he also hit her arm and the gun went off shooting Winford. Sanders ran out of the back door and did not know that Winford was dead until Moore told her the next day. This statement was not recorded and when Adams attempted to take another statement from Sanders, she recanted the previous statement implicating her.

¶8. A jury convicted Sanders of capital murder of Winford in August, 1995, and she was subsequently sentenced to life imprisonment. Sanders filed a Request for Out-of-Time Direct Appeal and Appointment of Counsel in March of 1998. In December of 1998, the circuit court, by way of a writ of mandamus from this Court, granted Sanders an evidentiary hearing on whether she received ineffective assistance of counsel regarding the filing of her appeal, the relief requested was subsequently granted in March of 1999. Aggrieved by the jury's verdict, Sanders filed a timely notice of appeal from that order.

## ANALYSIS

¶9. Sanders raises four issues on appeal. First, she contends that the verdict was against the overwhelming weight of the evidence. Second, she argues that the trial court erred in not suppressing her custody statement to the police. Third, Sanders claims that she was denied effective assistance of counsel. Finally, she states that the trial court erred in not suppressing the State's speculations and assumptions regarding her

in-custody statement in violation of her Fifth Amendment rights against self-incrimination and to not testify.

## I. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶10. Sanders contends that the physical evidence offered in this case does not support a guilty verdict. Sanders notes that the police department failed to find any fingerprints connecting any individual to the murder, and that there were no eyewitnesses to the incident. Further, Sanders notes the testimony of the pathologist, Dr. Steven Hayne, who testified that Winford was six feet, two inches tall and was shot in his upper chest area. Dr. Hayne's testimony also provided stated that the bullet took a downward trajectory. Sanders, who is 5 feet tall, submits that this evidence indicates that it would have been impossible for her to shoot Winford because of the downward path of the bullet.

¶11. Sanders also contends that the in-custody statement does not support the facts argued by the prosecution and creates a reasonable doubt as to its veracity. Specifically, Sanders argues that evidence indicated that entry into Winford's house was through a hole created through the floor, while she stated that her entry was through the back door. She also maintains that she implicated Moore and Littleton as her partners in the burglary and these individuals were excluded as suspects in the case by the police. Further, she told Detective Adams that she held the gun, while the evidence indicates that Winford was shot with a shotgun.

¶12. Dr. Hayne also testified that Winford suffered from three types of injuries: lacerations on the top of his head caused by some metal or wood instrument, a broken nose, and a gunshot wound and that he had been struck numerous times. Sanders argues that in her statement she only stated that Littleton was holding a stick, not an instrument with a blade. Sanders also points out that in her statement she did not indicate that Winford was hit more than once, or with more than one instrument.

¶13. The State alleges that in her statement Sanders admitted that she and the others went to Winford's house to obtain money and that she was holding a gun. The statement also indicated that one of the individuals hit Winford with a stick and also hit Sanders causing the gun to discharge. The facts provided by Sanders, the State contends, corroborated the physical evidence present at the crime scene. This Court has emphatically provided that it will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. *Groseclose v. State*, 440 So.2d 297, 900 (Miss. 1983). Further, on review, the evidence will be considered in the light most favorable to the verdict and the prosecution will be given the benefit of all favorable inferences that may be reasonably be drawn from the evidence. *Jackson v. State*, 580 So.2d 1217, 1219 (Miss. 1991).

¶14. In the case sub judice, Sanders's statement implicating herself and others in the murder of Winford clearly supports her involvement in Winford's murder. The police department withheld information regarding the details of Winford's assault; specifically the withholding of the fact that he was hit by a kaiser blade and a hoe around the same time that he was shot. Sanders's statement, assumingly admissible for the purpose of this particular argument, substantiates the evidence found at the scene of the crime, evidence that was withheld from the general public. The evidence also indicates that an individual may have initially gained entrance into the house by kicking in the floorboards. The two by four that blocked the front door and which was found on Winford's legs suggests that an individual may have also gained entrance through the back door. We find that it is not implausible that the two by four from the back door found across

Winford's back legs, was one of the instruments used to assault Winford, or that it was removed when Littleton opened the back door for Sanders and Moore as Sanders indicated. Additionally, although Sanders's statement provided that Littleton was holding a white stick, and she did not describe the instrument as a kaiser blade, and Sanders identified the weapon that she was holding as a gun instead of a shotgun, these discrepancies are not so conflicting from the physical evidence that Sanders's involvement in Winford's murder is inconceivable. Considering the facts in favor of the State, a reasonable person could have found that Sanders was guilty of murder. Accordingly, this assignment of error is without merit.

## II. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE APPELLANT'S IN CUSTODY STATEMENT TO THE POLICE.

¶15. Sanders asserts that her second statement should not have been admitted into evidence because she requested an attorney and was not provided with one prior to making her in-custody statement. Detective Adams testified that when Sanders gave her statement he Mirandized her, but she never asked for an attorney. Following a suppression hearing, the trial court denied Sanders's motion to suppress. Sanders argues that along with requesting an attorney, her testimony at the suppression hearing shows that she did not fully understand her rights. Further, Sanders alleges that the State bears the burden of proving all facts relevant to the admissibility of a confession beyond a reasonable doubt pursuant to *Agee v. State*, 185 So.2d 671 (Miss. 1966).

¶16. The State argues that at trial Sanders's attorney specifically noted that the objection was solely based on Sanders's contention that she was denied her right to counsel, not whether she fully understood her rights. During the suppression hearing the following dialog occurred:

Harris (counsel for Sanders): She requested counsel. That's the only issue.

Crook (counsel for the State): The issue is not voluntariness?

Harris: The issue is whatever is implicated by requesting counsel.

Crook: That's the sixth amendment

Harris: Okay.

The parties then went on to discuss what parties were necessary to testify on the issue in reference to *Agee*. Harris, counsel for defense, stated, "I am making no request for all of the officers who were present to come here and testify about this issue. I am not making that request to the Court." The parties agreed that only one of the officers, Detective Adams, would be used as a witness to the statement. Further, the parties concluded with the following exchange:

Crook: *Agee* goes to voluntariness

The Court: Yeah.

Crook: As I understand it.

Hedgepeth (counsel for State): Well, as I understand it, it does too, but that's what I want defense counsel to say on the record that he agrees that's the way our courts ruled that that's correct and we do not have to have every officer that was involved in everything.

¶17. The State submits that these exchanges indicate Sanders's repeated and absolute waiver of the issue of the voluntariness of her statement and was strictly based on whether Sanders had requested the presence of a lawyer during questioning. The State responds that Sanders never put on the evidence and expressly declined to attempt to produce evidence sufficient to invoke the *Agee* evidentiary rule. *Hogan v. State*, 730 So.2d 94, 98 (Miss. Ct. App. 1998) (holding that *Agee* applies only where defendant has alleged that his confession was induced by threats or promises). Further, the State submits that once the trial judge has determined at a preliminary hearing that a confession is admissible, the defendant has a heavy burden in attempting to reverse that decision on appeal. *Sills v. State*, 634 So.2d 124, 126 (Miss. 1994).

¶18. The State asserts that the evidence presented was restricted to whether Sanders requested counsel, and that Sanders stated that she did and Detective Adams testifying that she did not. The trial court concluded that Sanders's Sixth Amendment rights were not violated, the State argues, and an independent review of the limited evidence supports this conclusion.

¶19. In the absence of any specific or detailed findings of fact by the trial court as to how it determined the admissibility, this Court is not obligated to review under the clearly erroneous standard. *McCarty v. State*, 554 So. 2d 909, 912 (Miss. 1989). Further, this Court must conduct an independent review of the totality of the circumstances in the entire record in order to resolve the questioned validity of the confession. *Coverson v. State*, 617 So.2d 642, 647 (Miss. 1993).

¶20. In the instant case, the trial court did not make any specific factual findings regarding the admissibility of Sanders's confession. Accordingly, this Court is not obligated to review under the clearly erroneous standard, and must look to the totality of the circumstances regarding the statement.

¶21. Considering the totality of the circumstances, Detective Adams testified that when Sanders gave the statement they were in Batesville where Sanders was about to take a polygraph examination. Adams stated that he advised Sanders of her *Miranda* rights when they arrived, and that an Officer Smith was present when Adams gave Sanders her rights. Adams also stated that Sanders indicated that she understood her rights and did not ask for an attorney.

¶22. Adams testified that he first gave Sanders her *Miranda* rights during the first interrogation where she stated that she did not have any information regarding the murder. Adams also testified that at the second interrogation, which took place in Batesville, where Sanders was about to take a polygraph examination, he again gave Sanders her *Miranda* rights. Adams stated that he did not have recording equipment in Batesville to record Sanders's statement, therefore, when they returned to the jail he attempted to take another statement. Sanders, however, refused to give a taped statement and recanted the statement made in Batesville.

¶23. At the suppression hearing, Sanders testified that Adams was halfway through the questioning when she requested an attorney and that she did not fully understand her rights, except that she needed an attorney. She also stated that she stopped him and gave no statement following her request for an attorney.

¶24. Thus, the issue before this Court is whether Sanders invoked her right to have an attorney present, and whether she properly waived it. The Sixth Amendment right to counsel attaches once the proceedings reach the accusatory stage. *Johnson v. State*, 631 So.2d 185, 187-88 (Miss. 1994). The defendant's Sixth Amendment rights are not violated by questioning in the absence of his attorney unless the defendant has

asserted his right to an attorney. *Wilcher v. State*, 697 So.2d 1087, 1096 (Miss. 1997).

¶25. This case presents conflicting testimony between Sanders and the detective as to whether Sanders invoked this right. Adams contends that he advised Sanders of her rights in Batesville in the presence of Investigator Smith and Sanders did not invoke her right to counsel. At the suppression hearing, defense counsel waived the presence of Investigator Smith and stated that he would "accept the testimony of Bobby Adams in determination of this issue." Further, both counsel agreed to limit the suppression hearing to the issue of whether Sanders requested counsel.

¶26. Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence. *Balfour v. State*, 598 So.2d 731, 742 (Miss. 1992). Where the trial court admits a statement into evidence based on conflicting evidence, this Court must generally affirm. *Dancer v. State*, 721 So.2d 583, 587 (Miss. 1998)

¶27. Sanders had been previously informed of her rights, and there is no evidence that the statement was a result of promises, threats, or inducements. When Sanders made this statement there were only three people present in the room, Sanders, Adams, and Smith. Defense counsel waived Smith's presence at the hearing. The only evidence in the record regarding the voluntariness of the confession, therefore, is the testimony of Adams and Sanders. Most importantly, although Sanders claimed that Adams continued to question her after she requested counsel, she admitted that she gave no statement after the request. Admission of this statement was not contrary to the overwhelming weight of the evidence, nor after a review of the totality of the circumstances can we say that the trial court's general determination of admissibility was in error. Thus, Sanders's argument regarding the violation of her Sixth Amendment right to counsel is without merit.

### III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

¶28. Sanders contends that her trial attorney denied her effective assistance of counsel which resulted in extreme prejudice to her case. Sanders cites several of defense counsel's actions as prejudicial error. She points out counsel's failure to file a pretrial motion to suppress her in-custody statement; counsel's failure to object to the District Attorney's opening remarks which discussed Sanders's confession; counsel's failure to give an opening statement; counsel's waiver of the *Agee*, 185 So.2d 671, rule requiring all officers present during the confession to testify; counsel's failure to explore the issue of her cocaine addiction in relation to her confession, counsel's failure to object to the admission of the shotgun and yard tools and failure to establish a chain of custody; counsel's failure to cross examine the pathologist on the trajectory of the gunshot; and, counsel's failure to object to the prosecutor's closing remarks. Sanders submits that her counsel did not meet the objective standards of attorney performance and pursuant to *Strickland* offered ineffective assistance.

¶29. The State asserts that Sanders fails to argue that her trial counsel lacked strategy or that his performance was so deficient as to require the trial court to declare a mistrial sua sponte. The State charges that Sanders complaints consist of omissions, which she contends are unprofessional errors. The State, however, suggests that the errors asserted are within the ambit of trial strategy. *Hall v. State*, 735 So.2d 1124, 1227 (Miss. Ct. App. 1999). The State concludes that Sanders's counsel trial strategy did not prejudice the case to a level that would warrant reversal and, thus, this error should be denied.

¶30. When reviewing claims of ineffective assistance of counsel, this Court utilizes the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). This Court, in *Schmitt v. State*, 560 So. 2d 148, 154 (Miss. 1990), has held that "before counsel can be deemed to have been ineffective, it must be shown (1) that counsel's performance was deficient and (2) that the defendant was prejudiced by counsel's mistakes." One who claims that counsel was ineffective must overcome the presumption that "counsel's performance falls within the range of reasonable professional assistance."*Id*. at 154. To overcome this presumption, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."*Id*. (quoting *Strickland*, 466 U.S. at 694). There is a presumption that a trial attorney's performance is competent. *Edwards v. State*, 615 So.2d 590, 596 (Miss. 1993). Under *Strickland*, it further is presumed that the conduct of a trial attorney is reasonable, and that decisions made during trial are strategic. *Id.*

¶31. This issue is without merit. In the defense's motion for directed verdict, it appears that defense counsel's trial strategy was to argue that Sanders did not have the requisite intent to commit a burglary. Nor, did she have the requisite intent to commit a murder in the course of that burglary. In recognizing that Sanders's statement implicated her in the burglary, defense counsel argued that the statement only supported the inference that the shooting was accidental. Counsel suggests that the shooting was without malice and amounts to felony manslaughter. Defense counsel contends that felony manslaughter is not an enumerated offense which can be used to support a capital murder charge.

¶32. As to the objection to the admissibility of the statement, defense counsel admitted that he only recently learned that Sanders was contesting the voluntariness of the statement. Counsel proceeded stating:

> I need to protect her record and her interests and since they are going to comment about what she told him in a statement, I would ask the court, for the limited purpose of the admissibility of it, to let me have about a five-minute suppression hearing.

This argument, even if not a part of defense counsel's original strategy, became a part of his strategy in defending Sanders. When counsel requested this suppression hearing, he did so before the detective was allowed to repeat the statement to the jury. *But see Yarbrough v. State*, 529 So.2d 659, 662 (Miss. 1988) (reversing conviction based on ineffective assistance of counsel for failure to ask for a pre-trial suppression hearing of improper line-up before the jury heard about the identification). Thus, this portion of Sanders's argument fails.

¶33. Addressing the first prong of the *Strickland* test, nothing in the record supports Sanders's allegations that defense counsel was deficient in his representation at trial or that Sanders was prejudiced as a result. In defense counsel's motion for directed verdict the crux of the defense's argument appears to be that there was no intent on Sanders's part to commit a burglary and that the shooting was accidental, thus, arguably there would have been no need to deny that Sanders shot O.D. Winford, or made a statement that she did so.

¶34. Further, contrary to Sanders's assertion otherwise, in closing arguments, her trial counsel did discuss the downward trajectory of the gunshot, and the alleged inability of Sanders to shoot Winford from that angle. He also commented on the evidence of the tools and the shotgun arguing that there were no prints or blood that connected Sanders to the crime scene. Moreover, he also alleged that all of the evidence presented at trial was circumstantial and that Sanders's statement was inconsistent with the evidence

presented and was "nothing more than a bunch of lies." These arguments were part of the defense counsel's trial strategy and do not suggest deficient performance. Given the totality of the circumstances and the deferential standard of review for claims of ineffective assistance of counsel, this assignment of error is without merit.

### IV. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE STATE'S SPECULATIONS AND ASSUMPTIONS ABOUT APPELLANT'S IN-CUSTODY STATEMENT IN VIOLATION OF APPELLANT'S FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION AND THE RIGHT NOT TO TESTIFY.

¶35. The opening statements and closing remarks of the prosecutor, Sanders contends, improperly commented on her failure to testify. ***Taylor v. State***, 672 So.2d 1246 (Miss. 1996); ***Jones v. State***, 669 So.2d 1383 (Miss. 1995). These comments, Sanders argues, violated her right against self-incrimination and her right not to testify. Sanders points to an instance in the opening statement where the prosecutor referenced Sanders's statement, and then informed the jury that Sanders had recanted the statement. She also notes that during the questioning of Abel and Adams the prosecutor referenced the inconsistencies in Sanders's statement, speculated that Sanders did not reveal the entire truth to the police, and speculated as to who hurt Winford.

¶36. Sanders maintains that this Court has reiterated that the prosecution should not make remarks that draw the jury's attention to the defendant's failure to testify and admit or deny the contents of the confession, thus, she is entitled to a mistrial. ***Butler v. State***, 698 So.2d 314 (Miss. 1992); ***Griffin v. State***, 557 So.2d 542 (Miss. 1990).

¶37. The first statement that Sanders references in its entirety provides:

> Now since then, of course, she's recanted, said none of that was true either, But, ladies and gentlemen, that's our case. You go to her and you ask her to tell you what happened and she tells them in details what happened.

The record indicates that defense counsel did not object to this comment. The second statement in closing argument provided:

> Even the scientific evidence backs up her story. She said it was other people with her. I can't bring you a witness to tell you how many people were there because witnesses don't know. Okay. They can tell. And I'm sure I - - they don't even have to you. You can look at those pictures and knowing the facts of what they found in their investigation and you can draw the same reasonable conclusion.

The record indicates that defense counsel did not object to this comment either. In the last comment, the prosecutor commented and speculated on why Sanders may have lied about her cohorts. Defense counsel objected to this line of argument and moved for a mistrial, however, the trial court overruled this motion.

¶38. The State contends that Sanders's argument pertaining to the prosecutor's opening statement and a portion of the closing statement is procedurally barred because Sanders failed to make a contemporaneous objection at trial. The State also asserts that the comment was not in reference to Sanders's failure to testify, but an attempt to hypothesize why Sanders had not revealed the whole truth in her statement. In regards to Sanders's reference to the prosecutor's closing argument, the State proposes that the statement focuses on the prosecution's strategy that Sanders's statement contained details that would only be known by

individuals who were present at the time of the crime. The State also argues that Sanders's assignment to the prosecutor's other comment is barred. The State further suggests that the statement refers to the state's witnesses and its belief that there was more than one perpetrator.

¶39. It is well-settled that "[c]ounsel is allowed considerable latitude in the argument of cases and is limited not only to the facts presented in evidence, but also to deduction and conclusions he may reasonably draw therefrom, and the application of the law to the facts." *Wells v. State*, 698 So.2d 497, 506 (Miss. 1997) (*citing Ivy v. State*, 589 So.2d 1263, 1266 (Miss. 1991)). This Court has also stated that where the argument does not result in "unjust prejudice against the accused as to result in a decision influenced by the prejudice so created, this Court will find it harmless." *Wells*, 698 So.2d at 507 (quoting *Davis v. State*, 530 So.2d 694, 701 (Miss.1988)).

¶40. The statements made by the prosecutor in the opening statement and closing arguments were no more than deductions and conclusions that could reasonably flow from the facts and evidence presented. Even if we found these arguments to be in error, this error would be harmless because there does not appear to be any resulting unjust prejudice against Sanders from these statements. Therefore, this assignment of error is also without merit.

## CONCLUSION

¶41. We find that the verdict was not against the overwhelming weight of the evidence, the trial court did not err in suppressing Sanders's in-custody statement, the trial court attorney provided effective assistance of counsel, and the prosecutor did not make improper comments violating the Sanders's right against self-incrimination and her right not to testify. For the foregoing reasons, we find the trial court did not err, and its judgment is affirmed.

¶ 42. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED**. **SAID SENTENCE IS TO RUN CONSECUTIVELY WITH ANY OTHER SENTENCES IMPOSED BY ANY COURT.**

**PITTMAN, C.J., McRAE, P.J., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., NOT PARTICIPATING.**