# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-00527-SCT

*FREDDIE POINDEXTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/29/2000 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD BURDINE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/28/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     Freddie Poindexter appeals his conviction for murder less than capital and life sentence for the

shooting death of Geneva Johnson.  We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     At approximately 10:00 p.m. on March 2, 2000, Geneva Johnson and her sister-in-law, Sonya

Johnson, exited a Columbus, Mississippi, bingo parlor headed for Geneva's Lincoln Town Car.  As the two

women walked out of the bingo parlor, Freddie Poindexter, Geneva's former boyfriend, emerged from

behind a van parked next to Geneva's car.  Poindexter asked for a ride, telling the women that his car was

leaking oil. When the women got into the car, Geneva in the driver's seat and Sonya in the front passenger seat, Poindexter got in and sat in the back seat behind Geneva. Geneva drove for a while and then stopped and told Poindexter, "Okay. Freddie, we're here, you can get out now." Poindexter responded that he needed to talk to Geneva, and Geneva responded that she would call him. Poindexter again told Geneva he wanted to talk to her, and she again responded that she would call him. According to Sonya, Poindexter replied, "I don't want you to God damn call me tomorrow. I want to talk to you now." Geneva started rummaging through plastic shopping bags at which time Poindexter partially exited the vehicle and stood there for a couple of minutes. When Geneva then picked up a cell phone, Poindexter exited the vehicle completely and opened the front driver's side door. Geneva asked Poindexter, "Freddie, just tell me what it is you've got to say" to which Poindexter responded, "I don't like you laughing and talking about me behind my back[,] and I don't appreciate you going with what used to be an old friend of mine." Shortly after Geneva responded that she was not seeing Poindexter's "old friend," Poindexter fired two shots, both striking Geneva and killing her. Sonya witnessed everything that had transpired.

¶3.     Geneva had left the engine in her car running and the transmission in drive during the entire exchange. After Poindexter fired the two shots into Geneva, the Lincoln shot forward across the street, hit a gate, clipped a sign, and finally stopped when it crashed into the American Trouser building across the street.[1]

¶4.     Poindexter turned himself in to the Columbus Police Department the next morning on March 3, 2000. He had in his possession a Taurus blue steel .357 Magnum revolver in a paper bag along with several loose rounds of ammunition. In the cylinder were four live rounds and two spent rounds.

---

[1]Geneva's car's crashing through the gate was captured on American Trouser's video surveillance system.

¶5.     Poindexter was placed in Sergeant Rick Jones's office. Jones stepped out of his office for a moment and when he returned he found Poindexter on the phone. Jones explained the conversation as follows:

> Freddie [] was again, he was talking on the phone and as I stepped in I overheard him, [] say on the telephone that [] she had wasted seven years of his life and that [] she had made a fool out of him and that [] she had taken him for his money and she was running around telling everybody what she had done. Then there was a short pause and he said [] something to the effect that [] they'll probably give me one, and that was the end of the conversation.

Sergeant Neil Taylor was with Poindexter in Jones's office when Poindexter made the call and corroborated Jones's account of the conversation:

> [W]hile he was on the phone, I'm not sure who he was on the phone with, but he made [] the comment that [] he had wasted seven years of his life on her; he didn't say who she was. He said [] he worked real hard for them to have the things that they had had, and [] that past Sunday I think he said that she had dumped him and that he had found out that she had dumped him for someone that was his friend.

¶6.     After posting bond, Poindexter returned the same day to the Columbus Police Department to claim his car which had been impounded from the parking lot where it had been left on the night he shot Geneva. Contrary to what Poindexter had told Geneva and Sonya that his car was leaking oil, Poindexter started his car and drove it away.

¶7.     Poindexter was indicted on May 8, 2000, charging him with the murder of Geneva Johnson. Trial commenced on August 28, 2000, whereat Poindexter testified on his own behalf. On direct examination, Poindexter testified, "I kept axing [sic] why she wouldn't–why she wouldn't come and hear what I had to say, and she mumbled something and I said, 'Well at least you could give me that–that opportunity.' And she said something and I just–I snapped." When asked what he meant by "snapped," Poindexter

3

responded, "The best of my knowledge, the only thing I remember my blood pressure went skraight [sic] up in my head and I–that was the last thing I remember."

¶8. After approximately one hour of deliberation, the jury returned a verdict of "guilty as charged" after which the judge sentenced Poindexter to life in prison.

¶9. The trial court allowed an out-of-time appeal, and his counsel Richard Burdine submitted a brief pursuant to *Turner v. State*, 818 So. 2d 1186 (Miss. 2001), and ***Killingsworth v. State***, 490 So. 2d 849 (Miss. 1986), *overruled by **Turner**, supra*. Burdine's opinion is that Poindexter's appeal is without merit. He also informed Poindexter of his right to file a pro se supplemental brief on his own behalf.

¶10. Poindexter's pro se supplemental brief alleges the following assignments of error, reworded for clarity:

I. **WHETHER POINDEXTER WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL.**

II. **WHETHER THE TRIAL COURT ERRED IN ADMITTING THE HEARSAY TESTIMONY OF OFFICER RICK JONES.**

III. **WHETHER THE TRIAL COURT ERRED IN ALLOWING THE HEARSAY TESTIMONY OF KATHY HUTCHINSON.**

IV. **WHETHER THE TRIAL COURT ERRED IN SENTENCING POINDEXTER TO LIFE IN PRISON WITHOUT PAROLE ON THE BASIS THAT SAID SENTENCE IS ILLEGAL.**

V. **WHETHER THE INDICTMENT WAS DEFECTIVE BECAUSE THERE WAS NO SUPPORTING AFFIDAVIT ATTACHED TO THE INDICTMENT.**

VI. **WHETHER THE TRIAL COURT ERRED BY NOT HAVING A PSYCHOLOGICAL EXAMINATION ADMINISTERED TO DETERMINE WHETHER POINDEXTER WAS COMPETENT TO STAND TRIAL.**

4

**VII.    WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY TO MAKE ITS DECISION BASED ON PHYSICAL EVIDENCE AND NOT TO BE CONCERNED WITH ANYTHING ELSE AND TO FOLLOW THE LAW AS GIVEN IN THE COURT'S INSTRUCTIONS.**

**VIII.   WHETHER CUMULATIVE ERROR INFECTED THE FUNDAMENTAL FAIRNESS OF THE TRIAL AND MORE LIKELY THAN NOT CAUSED A SUSPECT VERDICT.**

<u>DISCUSSION</u>

**I.     WHETHER POINDEXTER WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL.**

¶11.    In support of his argument that Burdine was ineffective at trial and in this appeal, Poindexter asserts that counsel failed to cite any supporting authority in this appeal, failed to raise the issue of hearsay testimony, had a conflict of interest in that he was "very well acquainted" with the victim's family, failed to have a psychological examination performed on Poindexter and failed to confer with family to determine if he had any psychological problems, never asked Poindexter about his background, never presented evidence concerning Poindexter's character or his mental or emotional state of mind, should have presented a defense of insanity, failed to move for mistrial when the trial court supposedly refused to allow Poindexter to bring an insanity defense, and never filed motions or objected to the trial court's giving Poindexter an illegal sentence.  Many of these issues are raised as separate assignments of error and will be discussed there.  The remainder, inasmuch as they pertain to Poindexter's claim of ineffective assistance of counsel, will be addressed here.

¶12.    The standard of review is well-settled:

> The standard of review for a claim of ineffective assistance of counsel is a two-part test: the defendant must prove, under the totality of the circumstances, that (1) his attorney's performance was deficient and (2) the deficiency deprived the defendant of a fair trial. ***Hiter v. State***, 660 So. 2d 961, 965 (Miss. 1995).  This review is highly

5

deferential to the attorney, with a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. *Id.* at 965. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy" and cannot give rise to an ineffective assistance of counsel claim. *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995).

Anyone claiming ineffective assistance of counsel has the burden of proving, not only that counsel's performance was deficient but also that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Additionally, the defendant must show that there is a reasonable probability that, but for his attorney's errors, he would have received a different result in the trial court. *Nicolau v. State*, 612 So. 2d 1080, 1086 (Miss. 1992). Finally, the court must then determine whether counsel's performance was both deficient and prejudicial based upon the totality of the circumstances. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988).

*Jackson v. State*, 815 So. 2d 1196, 1201 (Miss. 2002). *See also Pruitt v. State*, 807 So. 2d 1236, 1239-40 (Miss. 2002); *Powell v. State*, 806 So. 2d 1069, 1076-77 (Miss. 2001); *Simmons v. State*, 805 So. 2d 452, 479 (Miss. 2001); *Sanders v. State*, 801 So. 2d 694, 702 (Miss. 2001); *Spry v. State*, 796 So. 2d 229, 232 (Miss. 2001).

¶13. Of the remaining supposed instances of ineffective assistance, Poindexter's claim of counsel's conflict of interest finds no support whatsoever in the record. On the claim of counsel's failure to present evidence concerning Poindexter's character, we will not fault counsel for not wanting to open that door. Poindexter has presented no evidence of a deficiency by his counsel and likewise no evidence of prejudice. This assignment of error is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN ADMITTING THE HEARSAY TESTIMONY OF OFFICER RICK JONES.

¶14. Poindexter next argues that the trial court erred in allowing the testimony of Officer Rick Jones who, along with Sergeant Neil Taylor, overheard Poindexter on the telephone stating to the effect that Geneva had recently dumped him. Poindexter argues this assignment of error as the improper admission of character evidence under Miss. R. Evid. 404(a).

¶15.    Counsel never objected to Jones's testimony. Since there was no contemporaneous objection, this assignment of error is waived. Procedural bar aside, Poindexter's statements did not pertain to his character and were not inadmissible hearsay for they were his own statements properly admitted against him pursuant to Miss. R. Evid. 801(d)(2).[2] *See Alexander v. State*, 759 So. 2d 411, 415-16 (Miss. 2000); *Gayten v. State*, 595 So. 2d 409, 415 (Miss. 1992); *Thornhill v. State*, 561 So. 2d 1025, 1029 (Miss. 1989). This assignment of error is without merit.

### III.    WHETHER THE TRIAL COURT ERRED IN ALLOWING THE HEARSAY TESTIMONY OF KATHY HUTCHINSON.

¶16.    During the State's direct examination of Kathy Hutchinson,[3] she gave hearsay testimony about what Geneva told her about Geneva's relationship with Poindexter. Poindexter objected, at which time the judge ordered the jury out of the courtroom and conducted a hearing on the objection. The judge sustained Poindexter's objection and admonished the jury to disregard Hutchinson's answer to the last question asked.

¶17.    Poindexter argues that the trial court erred in allowing Hutchinson's hearsay testimony before the jury. This assignment of error is obviously without merit. The judge sustained Poindexter's objection and instructed the jury to disregard the answer containing the improper hearsay evidence. We have repeatedly held that a jury is presumed to have followed the judge's instructions. *See Moody v. State*, 841 So. 2d 1067, 1076 (Miss. 2003); *Washington v. State*, 800 So. 2d 1140, 1143 (Miss. 2001); *Hill v. State*, 774 So. 2d 441, 446 (Miss. 2000).

---

[2]Miss. R. Evid. 801(d) provides in pertinent part: "A statement is not hearsay if: . . .(2) Admission by Party-Opponent. The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity. . . ."

[3]Kathy Hutchinson was Geneva's coworker for approximately five years.

7

## IV. WHETHER THE TRIAL COURT ERRED IN SENTENCING POINDEXTER TO LIFE IN PRISON WITHOUT PAROLE ON THE BASIS THAT SAID SENTENCE IS ILLEGAL.

¶18. Poindexter argues that he was improperly sentenced to life imprisonment without parole as a habitual offender. He notes that the jury was not instructed regarding his possible habitual offender status. He cites Miss. Code Ann. § 99-19-81 (2000), the habitual offender sentencing statute, arguing that there was no proof of prior convictions.

¶19. Poindexter was not sentenced as a habitual offender because, as far as we can tell, he has no prior record. Thus, Miss. Code Ann. § 99-19-81 is inapplicable, and Poindexter's reliance on it is misplaced. However, Miss. Code Ann. § 97-3-21 (2000) applies and states in part: "Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary." This assignment of error is without merit.

## V. WHETHER THE INDICTMENT WAS DEFECTIVE BECAUSE THERE WAS NO SUPPORTING AFFIDAVIT ATTACHED TO THE INDICTMENT.

¶20. Poindexter asserts that the indictment was defective for lack of a supporting affidavit. Miss. Code Ann. § 99-7-9 (2000 & Supp. 2002) requires an affidavit of the foreman of the grand jury that all indictments were concurred in by twelve or more members and at least fifteen members were present during deliberations.

¶21. Poindexter never filed a motion to quash the indictment based on its alleged deficiency. Thus, this issue is procedurally barred.

¶22. Procedural bar aside, this assignment of error is without merit. In *McCormick v. State*, 377 So. 2d 1070 (Miss. 1979), the defendant raised as error the trial court's refusal to sustain his demurrer to the indictment on the basis that there was no supporting affidavit of the foreman of the grand jury. We noted

that the intent of the Legislature in amending Miss. Code Ann. § 99-7-9 in 1977 to provide for an affidavit was to do away with having at least twelve grand jurors physically present in court when every indictment was handed down. *Id.* at 1072-73. We held, "The legal evidence of the concurrence of twelve or more of the grand jurors in finding and presenting the indictment is fully established by the signing thereof on the part of the foreman and the marking of it 'filed' by the clerk of the court." *Id.* (quoting *Temple v. State*, 165 Miss. 798, 804-06, 145 So. 749, 750-51 (1933)). Poindexter's indictment was signed by the district attorney and the foreman of the grand jury, stamped as filed and recorded, and endorsed by the circuit clerk.

**VI. WHETHER THE TRIAL COURT ERRED BY NOT HAVING A PSYCHOLOGICAL EXAMINATION ADMINISTERED TO DETERMINE WHETHER POINDEXTER WAS COMPETENT TO STAND TRIAL.**

¶23. Poindexter argues that the court erred in failing to order a psychological examination to determine his competency. He cites as proof his testimony at trial where he testified that he was in shock, that he could not remember shooting anyone, that his blood pressure shot straight to his head, and that he "snapped" for the proposition that "this plainly shows that there is a possible insanity problem." He further states that the court should have ordered an examination because this was a murder case and that the trial court should have given an insanity instruction.

¶24. No authority whatsoever is cited in support of this assignment of error, thus it is procedurally barred and we are under no obligation to address it. *Joiner v. State*, 835 So. 2d 42, 44 (Miss. 2003); *Rigby v. State*, 826 So. 2d 694, 707-08 (Miss. 2002); *Simmons v. State*, 805 So. 2d at 487; *Edwards v. State*, 737 So. 2d 275, 295 (Miss. 1999); *Melton v. State*, 723 So. 2d 1156, 1159 (Miss. 1998);

9

*Cavett v. State*, 717 So. 2d 722, 726 (Miss. 1998); *Williams v. State*, 708 So. 2d 1358, 1361 (Miss. 1998).

¶25. Procedural bar aside, there is more than sufficient evidence to find that Poindexter was competent to stand trial. If there had been any indication to the contrary, surely his counsel would have noticed and responded accordingly. Poindexter's competence is likewise demonstrated through the 48-page pro se supplemental brief he filed for this appeal.

¶26. Assuming Poindexter meant to argue insanity *at the time of the crime* and that his counsel failed to raise it as a defense and the trial court failed to address it, there is evidence suggesting that Poindexter was not insane at the time he shot Geneva. Notwithstanding Poindexter's self-serving testimony that he "snapped," there is absolutely nothing in the record supporting insanity–no medical evidence or otherwise. In fact, the evidence shows that Poindexter laid in wait for Geneva, since he knew she frequented the bingo parlor. He also used the false pretense that his car was leaking oil in order to obtain a ride from Geneva. This does not show insanity.

¶27. The circumstances do not even justify an inference of manslaughter, for which the jury was instructed. We held in *Gaddis v. State*, 207 Miss. 508, 515, 42 So. 2d 724, 726 (1949), "Words of reproach, criticism or anger do not constitute sufficient provocation to reduce an intentional and unjustifiable homicide from murder to manslaughter." Geneva's remarks to Poindexter that she would call him obviously do not survive such an inquiry.

**VII. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY TO MAKE ITS DECISION BASED ON PHYSICAL EVIDENCE AND NOT TO BE CONCERNED WITH ANYTHING ELSE AND TO FOLLOW THE LAW AS GIVEN IN THE COURT'S INSTRUCTIONS.**

¶28.     Although Poindexter does not identify the instruction, we believe it is Instruction C.01, the ubiquitous first instruction judges give in every criminal case. It is the common court-provided instruction that begins, "Members of the jury, you have heard all of the testimony and received the evidence introduced in the course of this trial. The Court will presently instruct you as to the rules of law which you will use and apply to this evidence in reaching your verdict." Poindexter argues, "By the trial court giving such instructions to the jury to be concerned only with what the Court tells them through evidence or instructions, violates all rights given Poindexter in Due Process."

¶29.     Poindexter's authority in support of such a proposition is the Magna Carta of 1215[4] and the United States Supreme Court's opinion in *Georgia v. Brailsford*, 3 U.S. (Dall.) 1, 1 L. Ed. 483 (1794). *Brailsford* is relevant insomuch as it states, "It may not be amiss, here, Gentlemen, to remind you of the good old rule, that on questions of fact, it is the province of the jury, on questions of law, it is the province of the court to decide." *Id.* at 4.

¶30.     Assuming such a citation of authority is sufficient to avoid a procedural bar, this issue is also procedurally barred because no objection was raised at trial. In addition, it is obviously without merit. Poindexter argues that the instruction prevented jury nullification in contravention of his constitutional rights. This exact issue was raised in *Hansen v. State*, 592 So. 2d 114, 140 (Miss. 1991), where we held that "an instruction that implicitly condemns jury nullification is not error." Poindexter's seven-page exposition on the "elementary rules of justice" does not belie the fact that the instruction was proper and is given in every criminal case.

---

[4]The Magna Carta is the "English charter that King John granted to the barons in 1215 and that Henry III and Edward I later confirmed. It is generally regarded as one of the great common-law documents and as the foundation of constitutional liberties." Black's Law Dictionary 962 (7th ed. 1999).

**VIII.  WHETHER CUMULATIVE ERROR INFECTED THE FUNDAMENTAL FAIRNESS OF THE TRIAL AND MORE LIKELY THAN NOT CAUSED A SUSPECT VERDICT.**

¶31.    There being no error, harmless or otherwise, upon which a reversal may be predicated, it

necessarily follows that there is no cumulation of error.

## CONCLUSION

¶32.    Finding no reversible error, we affirm the judgment of the Lowndes County Circuit Court.

¶33.    **CONVICTION OF MURDER LESS THAN CAPITAL AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**


        **PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, EASLEY AND CARLSON, JJ., CONCUR.  DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**