886 So.2d 22 (2004)
Gerald BARRETT, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01565-COA.
Court of Appeals of Mississippi.
May 25, 2004.
Rehearing Denied August 3, 2004.
Certiorari Denied November 10, 2004.
William Joseph Barnett, Jackson, Dan W. Duggan, Brandon, attorneys for appellant.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before KING, C.J., BRIDGES, P.J., THOMAS and CHANDLER, JJ.
THOMAS, J., for the Court.
¶ 1. Gerald Barrett was convicted in Rankin County Circuit Court of statutory rape and one count of sexual battery. He was sentenced to life imprisonment for the statutory rape and to forty years for the *23 sexual battery, the sentences to run consecutively. He appeals and raises the following issues:
Issue One: Counsel for the appellant was ineffective in not objecting to continued leading questions by the State.
Issue Two: Trial counsel was ineffective in not objecting to continuous introduction of prior bad acts against the appellant by the State.
Issue Three: The verdict was contrary to both the weight and the sufficiency of the evidence.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. In June 2000, N.B. moved in with her father, Gerald Barrett. Barrett did not know that she existed until she was ten and DNA evidence confirmed that she was his daughter. N.B. lived in a variety of foster homes prior to moving in with Barrett in his trailer home in Rankin County, Mississippi. N.B. testified that she was thirteen in 2000 and that her relationship with her father was not a normal one because they were engaging in sexual intercourse with each other. She testified that they had sex about twenty times. Barrett was age thirty-three at the time.
¶ 4. N.B. testified about one particular incident when her friend C.C. was visiting in her home. According to testimony from N.B. and C.C., Barrett called them into his room, shut the door, undressed and then undressed each of the girls as well. Barrett asked the girls to have sex with him. N.B. said that she would only if C.C. also agreed. C.C. agreed but only if N.B. would go first. N.B. proceeded to crawl on top of Barrett and have sex with him. Afterwards, C.C. refused to have sex with Barrett because she saw that N.B. was in pain during sex.
¶ 5. N.B. also testified to having seen Barrett place his hand in C.C.'s pants sometime around the time that C.C. saw them have sex. In her testimony, C.C. described a separate incident in which Barrett came in and sat beside her and N.B. on the "couch bed" in the trailer and Barrett placed his finger in her vagina. According to her, he also made her rub his "d-i-c-k." C.C. also corroborated N.B.'s testimony as to the events in Barrett's bedroom when all three of them were naked and when she saw Barrett and N.B. have sex. C.C. also was questioned about a later event around the end of July or early August when Barrett allegedly only "fingered" her and when she again refused to have intercourse with him. The jury found Barrett guilty of one count of sexual assault.
¶ 6. Also living in the trailer at the time of the alleged incidents were Barrett's mother, Margaret Anthony, and her then live-in boyfriend, Eddie Taylor, and Barrett's brother, Irby. There were three bedrooms in the trailer. Anthony and her boyfriend shared one bedroom, Irby was in another, and most of the time N.B. had the other bedroom, with Barrett sleeping on the couch. There was apparently a period of time when Barrett and N.B. shared a bedroom. Both Barrett's mother and Eddie Taylor testified that they never saw anything improper but that they worked the late shift until after midnight and were not at the trailer a good part of the night.
¶ 7. The defense attempted to put on proof that N.B. had a propensity for lying and that she was jealous of other women in her father's life. There was also testimony that she was involved with a boy her age and that her father had attempted to break up the relationship and N.B. threatened to run away.
¶ 8. The allegations against Barrett came to light after he reported N.B. as a *24 runaway. Officer Aaron Hirschfield of the Pearl Police Department testified that he received a call about N.B. being a runaway and went to the hospital to interview her to get information about the possible sex with Barrett. Hirschfield then went to Barrett's trailer to interview him. Hirschfield asked for and received permission to search the trailer. Hirschfield asked Barrett if there was a reason why there would be semen on N.B.'s bed and, according to Hirschfield, Barrett told him that he masturbated on the bed and that N.B.'s body fluids might be on the bed as well if she masturbated on the bed as well. The sheets were taken as evidence, but no testing was ever done.
¶ 9. Barrett testified in his own defense and denied that he had sexual relations with N.B. He did testify that he had been convicted of prior offenses of burglary and sale of narcotics and that he was in fact guilty of these offenses. The State also introduced statements that Barrett signed which stated that he had not committed any felony offenses. There was also testimony presented at trial that Barrett's brother, Irby, had just been released from prison at the time he moved into Barrett's trailer.
¶ 10. Patricia Barrett, Barrett's new wife of four months, testified that she never observed any sexual activity between Barrett and N.B. Patricia also testified that N.B. did not like her and directly contradicted N.B.'s testimony that N.B. did not know her.
¶ 11. Barrett also offered character witnesses who testified that Barrett had a good reputation in the community. On cross-examination these witnesses were asked about Barrett's criminal record and whether this was consistent with a good reputation.
¶ 12. The jury found Barrett guilty of the statutory rape of his daughter and also guilty of one of two counts of sexual assault of the daughter's friend. The judge sentenced Barrett to life imprisonment for the statutory rape and a consecutive sentence of forty years for the sexual assault.
¶ 13. On motion for new trial, a different defense attorney offered an undated letter supposedly written by N.B. which stated that her father made her breakup with her boyfriend. This conflicted with her testimony at trial. A witness in support of the motion for new trial testified that she overhead a conversation in which C.C. stated that she gave testimony at trial only because she did not want Irby, Barrett's brother, or herself to go to jail. The testimony was that C.C. was coerced into testifying in order to prevent Irby from being charged with statutory rape because the district attorney had found videotapes and "other stuff."
¶ 14. Barrett's trial was in March of 2002, and the motion for rehearing was heard on August 16, 2002. According to the State, "more than two months" before the hearing, Irby was convicted of statutory rape and sentenced to ten years imprisonment for his involvement with C.C. Barrett's motion for a new trial was denied.

DISCUSSION
Issue One: Counsel for the appellant was ineffective in not objecting to continued leading questions by the State.
¶ 15. A claim of ineffective assistance of counsel is considered under the holding of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[B]efore counsel can be deemed to have been ineffective, it must be shown (1) that counsel's performance was deficient and (2) that the defendant was prejudiced by counsel's mistakes." Sanders v. State, 801 So.2d 694, 702(¶ 30) (Miss.2001). There is a presumption that defense counsel is competent, *25 that defense counsel's decisions are strategic, and that "counsel's performance falls within the range of reasonable professional assistance." The presumption may be rebutted if the defendant can demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.
¶ 16. Barrett claims that his counsel was ineffective for failing to object to leading questions during the testimony of N.B. and C.C. The supreme court has defined leading questions as follows:
A leading question is one that suggests to the witness the specific answer desired by the examining attorney. Trial courts are given great discretion in permitting the use of such questions, and unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision. This is because the harm caused is usually inconsiderable and speculative, and only the trial court was able to observe the demeanor of the witness to determine the harm.
Tanner v. State, 764 So.2d 385 (¶ 58) (Miss.2000) (citing Clemons v. State, 732 So.2d 883 (¶ 25) (Miss.1999)). See Whitlock v. State, 419 So.2d 200, 203 (Miss.1982).
¶ 17. Mississippi Rule of Evidence 611(c) states that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." However, within the comments to this rule, it is noted that in some situations the use of leading questions may become necessary. "Children are a classic example of the kinds of witnesses for whom leading questions may be necessary." Ivy v. State, 522 So.2d 740, 742 (Miss.1988). In Gandy v. State, 788 So.2d 812, 814 (¶ 10) (Miss.Ct.App.2001), the Court stated:
Gandy argues that Ivy is inapplicable here because the witness did not first exhibit problems with communication. The record does not reveal any hesitancy on the victim's part in testifying as to the events that occurred. However, communication difficulties are not just in situations where the victim is embarrassed or ashamed. Here the victim testified as to the details of the event without any difficulty. She testified using terms in the vernacular. The leading questions only clarified the terms used in order to obtain the anatomically correct terminology. In this case the communication difficulties concern the terminology.
Gandy contends that without the use of the leading questions the State would not have proved its case. We find only that certain clarity was brought to the testimony by the nature of the questions, and disagree that any substantively different evidence was thereby admitted. Gandy was not prejudiced. The leading questions were proper. We find no error on this point.
¶ 18. In the present case, a few of the questions asked could be considered leading questions, but due to the age of the witnesses and the limited manner in which the questions were used, it is doubtful that the trial judge would have disallowed the questions. The witnesses testified without hesitancy to the particulars of the events and the questions could easily have been reframed to elicit the same testimony. Barrett would have benefited little by an objection from counsel, and he cannot show that he was prejudiced by the failure of counsel to object. We find no reversible error.
Issue Two: Trial counsel was ineffective in not objecting to continuous introduction of prior bad acts against the appellant by the State.
*26 ¶ 19. The same standard for ineffective assistance of counsel would apply to this second assignment of error. In this issue, Barrett claims that his trial counsel rendered ineffective assistance for permitting prior bad acts to be introduced without objection. Specifically, Barrett raises that the State introduced testimony that he and N.B. had sex at least twenty times, that he hurt her before and after the incident giving rise to the trial, and that he had penetrated C.C. with his fingers four or five times.
¶ 20. As stated by Barrett, the general rule is that prior bad acts are generally not allowed. However, M.R.E. 404(b) provides for an exception to the general rule that in criminal prosecutions, evidence of other crimes is not admissible. See White v. State, 520 So.2d 497, 500 (Miss.1988) (not error to permit testimony of previous sexual offenses between appellant and his victim, especially where victim is under the age of consent); Coates v. State, 495 So.2d 464, 468 (Miss.1986) (relaxation of general rule and allowed evidence of similar sexual acts that had occurred on numerous occasions prior to the offense charged).
¶ 21. Unfortunately for Barrett, there is a clear line of cases authorizing a circuit court in the prosecution of a sexual offense to permit evidence of past sexual crimes of the accused. Beginning with Brooks v. State, 242 So.2d 865 (Miss.1971), the Mississippi Supreme Court in a rape case held that proof of a prior sexual offenses between the defendant and prosecuting witness was admissible in this type of case. The court therein adopted the general rule of other states permitting evidence of past sex crimes and sexual offenses. See 77 A.L.R.2nd 841, 1961 WL 12944 (1961). That authority cites cases from other jurisdictions permitting previous sodomization of the victim by the accused to be offered into evidence by the trial court., 77 A.L.R.2nd at 883.
¶ 22. In Davis v. State, 367 So.2d 445, 446 (Miss.1979), the supreme court held that it was not error, where the accused was charged with sodomy upon an eleven-year-old female, to permit the victim to testify that the accused had subjected her to the same thing on previous occasions. In Speagle v. State, 390 So.2d 990, 993 (Miss.1980), an incest case, the court held that evidence of prior incestuous conduct with the victim was admissible, and in Hicks v. State, 441 So.2d 1359, 1361 (Miss.1983), the court held that proof of prior sexual acts were admissible in a criminal charge of sexual battery of a father upon his twelve-year-old daughter. The court again held that it was not error to permit testimony of previous sexual offenses between appellant and his victim in Woodruff v. State, 518 So.2d 669, 671 (Miss.1988).
¶ 23. In doing so, the court has held that such evidence is admissible in this limited situation to show the appellant's lustful, lascivious disposition toward his particular victim, especially where, as here, the victim was under the age of consent. Crawford v. State, 754 So.2d 1211, 1220 (Miss.2000). See also State v. Carver, 37 Wash.App. 122, 678 P.2d 842 (1984).
¶ 24. Since the cases clearly hold that it is not error to admit this evidence, there can be no claim of ineffective assistance of counsel premised on the failure of trial counsel to object. There is no merit to this assignment of error.
Issue Three: The verdict was contrary to both the weight and the sufficiency of the evidence.
¶ 25. The standard of review is a familiar one. "In determining whether a jury verdict is against the overwhelming weight of the evidence, [appellate courts] must accept as true the evidence which supports *27 the verdict and will reverse only when convinced that the [trial] court has abused its discretion in failing to grant a new trial." Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). "Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will [an appellate court] disturb it on appeal." Id. (citing Benson v. State, 551 So.2d 188, 193 (Miss.1989)). "Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict." Id. (citing Mitchell v. State, 572 So.2d 865, 867 (Miss.1990)).
¶ 26. Our standard of review in a challenge to the sufficiency of the evidence is different, yet well established. We may reverse only where all credible evidence, along with all reasonable inferences, consistent with guilt and viewed in the light most favorable to the prosecution is such that a fair and reasonable jury could not find the defendant guilty. Gibby v. State, 744 So.2d 244, 245(¶ 6) (Miss.1999).
¶ 27. Under this assignment of error, Barrett attacks the credibility of the testimony of C.C. and N.B. He characterizes C.C.'s testimony as inconsistent and argues that she "was certainly no child of tender years as evidence by her graphic testimony." Concerning N.B., Barrett argues that she was jealous of Barrett's relationships with a number of girlfriends and resentful of the fact that Barrett disliked N.B.'s boyfriend. Barrett also points to the witnesses who testified they never saw any improprieties between Barrett and N.B.
¶ 28. Both N.B. and C.C. testified as both victims and eyewitnesses to the crimes for which Barrett was convicted. Any issues of credibility or motive was for the jury to decide. McClain v. State, 625 So.2d 774, 778 (Miss.1993). This Court cannot step into the jury box and usurp the role of the jurors. There is no merit to the argument in this assignment of error.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF COUNT IV STATUTORY RAPE AND SENTENCE OF LIFE AND CONVICTION OF COUNT VI SEXUAL BATTERY AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, THE SENTENCES TO RUN CONSECUTIVELY, IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.