FAIR, J.,
for the Court:
¶ 1. Ricky Archer was convicted of fondling and statutory rape of his daughter, “Abby.”[1] Archer was sentenced to sixteen years imprisonment on the rape count and two years for the fondling, with the sentences to run concurrently. On appeal he raises eleven varied issues. As we find no reversible error, we affirm Archer’s convictions and sentences.
FACTS
¶ 2. In 2006, Abby was twelve years old and in the fifth grade. Her parents were unmarried, and she lived with her father. Abby testified that one evening, Archer picked her up from a visit with her mother. Archer was drunk, and he drove around instead of taking them home. He asked Abby whether she had developed underarm and pubic hair. Eventually, Archer pulled to the side of the road and undressed Abby. After demanding and receiving assurances that she would not tell her mother, Archer began touching Abby and put his fingers into her vagina. Archer then drove to a more secluded place in Morgan City, Mississippi, where he had sex with Abby. Archer had sex with Abby again that night after they finally returned home. In her testimony Abby also recounted several other times Archer had sex with her, including two occasions where he did it in front of one of her sisters.
¶ 3. Abby’s older sisters, “Betty” and “Claire,” each testified that Archer had sex with Abby in their presence. Betty testified that Archer drove her and Abby to a secluded place where he had sex with Abby to introduce Betty to the idea of having sex with him,[2] and then he had sex with Betty. Claire testified to a similar incident. Archer made statements to the effect that he was teaching the girls how to have sex. According to Abby, Archer continued to have sex with her for years after the first incident.
¶ 4. Abby did not disclose the abuse until 2008. She first told her mother, who did not respond because she was intoxicated at the time. Later, Abby told her aunt, who reported it to the authorities. At the time of trial in 2010, Abby was fifteen, Betty was eighteen, and Claire was twenty.
¶ 5. For the defense, Archer’s niece testified that Abby had told her the abuse did not happen and that she wanted her father to get out of jail. Archer also called his son to testify to a similar statement. Archer’s theory of the case was that Abby was angry with his discipline and had accused him at the prompting of her maternal aunt, who had allegedly threatened that Abby would be sent to a foster home if she did not testily.
*618 ¶ 6. The indictment alleged that Archer committed statutory rape and fondling between August 1, 2006, and June 31, 2007. Archer was convicted of both counts, and he appeals.
DISCUSSION
¶ 7. Archer enumerates eleven issues on appeal, which we have reorganized somewhat for our analysis.
1. Sufficiency of the Evidence
¶ 8. In his first issue, Archer alleges there was insufficient evidence to support his conviction. “[T]he critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quotations omitted). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 9. The linchpin of Archer’s argument is Mississippi Code Annotated section 97-3-69 (Rev.2006), which appears to require corroboration of the prosecutrix’s testimony to support a statutory rape conviction. In recent years, however, the Mississippi Supreme Court has unambiguously held that the statute requires corroboration only if the victim’s testimony is discredited or contradicted by other credible evidence. Anderson v. State, 62 So.3d 927, 943 (¶ 55) (Miss.2011); Poole v. State, 46 So.3d 290, 294 (¶ 25) & n. 9 (Miss.2010); Parramore v. State, 5 So.3d 1074, 1077-78 (¶ 12) (Miss.2009); Withers v. State, 907 So.2d 342, 353 (¶ 32) (Miss.2005). Archer relies on older cases to support his argument, ignoring the supreme court’s more recent holdings. We are bound by that precedent.
¶ 10. At any rate, this discussion is academic because Abby’s testimony was corroborated by her two sisters. Archer argues that their testimony is not credible, but the concerns he raises — the girls’ reluctance to come forward, prior denials of abuse, and alleged minor inconsistencies in the testimony — were properly left to the jury. “The law is clear that the weight and credibility to give to the evidence are within the province of the jury.” Victory v. State, 83 So.3d 370, 375 (¶ 22) (Miss.2012).
¶ 11. We find Archer’s convictions supported by sufficient evidence.
2. Weight of the Evidence
¶ 12. A challenge to the weight of the evidence will be successful only when the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18).
¶ 13. The evidence must be viewed in the light most favorable to the verdict, and a new trial should be granted “only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. The motion for a new trial is entrusted to the trial judge, who had a first-hand view of the trial. “[R]eversal is warranted only if the trial court abused its discretion....” Ivy v. State, 949 So.2d 748, 753 (¶ 21) (Miss.2007).
¶ 14. Archer argues that the absence of physical evidence and his attacks on the credibility of the victims require reversal. Again, however, credibility was *619 a question for the jury. See Victory, 83 So.3d at 375 (¶ 22). As an appellate court reviewing a cold record, we cannot say the trial court abused its discretion in denying the motion for a new trial. We do not find the verdict against the overwhelming weight of the evidence.
3. Cross-examination; Impeachment; Misconduct
¶ 15. Only two witnesses testified for Archer — Latonya Edwards, his niece, and “Little Ricky” Archer, his son. Both recounted that Abby had denied the abuse some time after Archer’s arrest. Under this umbrella, Archer complains of the prosecutor’s cross-examinations and makes certain arguments regarding the testimony.

A. Latonya Edwards

¶ 16. During his cross-examination of Edwards, the prosecutor asked about an interview she had with him the day before, the first day of the trial.[3] The prosecutor repeatedly contended that Edwards had told him only that Abby said she wanted her father to get out of jail. According to the prosecutor, Edwards had not mentioned Abby also denied a sexual relationship with her father. Edwards disputed the prosecutor’s account. The prosecutor then repeated his account several times and asserted that two other people — an investigator and an intern — were present during the interview. The prosecutor, through his questions, insinuated they would contradict Edwards’s testimony.
¶ 17. On appeal, Archer argues the prosecutor lacked a factual basis for the questions asked in his cross-examination of Edwards because he did not call any witnesses in rebuttal to substantiate his assertions about what Edwards had omitted from the interview.
¶ 18. A prosecutor must always have a good faith basis for questions asked on cross-examination. Hosford v. State, 525 So.2d 789, 793 (Miss.1988). This means that the questions must be grounded in fact; the prosecutor is not required to produce extrinsic evidence in support of every cross-examination on prior inconsistent statements. See Harrison v. State, 534 So.2d 175, 178-179 (Miss.1988); Foster v. State, 508 So.2d 1111, 1115 (Miss.1987), overruled on other grounds by Powell v. State, 806 So.2d 1069, 1080 (¶ 33) (Miss.2001). See also 4 B. Weinstein & M.A. Berger, Weinstein’s Federal Evidence § 613.05[1] (2d. ed.2012).
¶ 19. Cross-examination that is unfairly prejudicial to the defendant can be error, however. For example, in Walker v. State, 740 So.2d 873, 885 (¶ 46) (Miss.1999), the prosecutor asked questions, couched as impeachment, that insinuated uncharged bad acts of the defendant— membership in a gang and threatening a witness with gang retaliation. See also Hosford, 525 So.2d at 790-94 (asking defendant whether he had sexually molested his stepchildren); Flowers v. State, 842 So.2d 531, 552 (¶ 58) (Miss.2003) (asking three defense witnesses whether they had harassed an eyewitness and told her to lie).
¶ 20. Similarly, “counsel may not use prior inconsistent statements as a guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible.” Flowers v. State, 773 So.2d 309, 326 (¶ 58) (Miss.2000) (quotations omitted) *620 (emphasis in original). In Flowers, the prosecutor asked a witness whether she had told another person that she gave the defendant shoes like those worn by the killer. The witness denied making the statement, but the supposed impeaching witness was never asked to substantiate the prosecutor’s question. This was prejudicial error because the prosecutor cannot use impeachment “merely as a subterfuge to place incriminating hearsay before the jury.” Harrison, 534 So.2d at 178-79 (Miss.1988).
¶ 21. Archer has not shown that the prosecutor’s cross-examination rose to the level of unfair prejudice illustrated by the above cases. Moreover, his contention that the prosecutor lacked a factual basis is unsupported by the record because Edwards equivocated in her testimony on redirect. The following exchange occurred:
A. [Abby] had told me her daddy never did nothing [sic] to her.
Q. Did you tell that to [the prosecutor] yesterday?
A. Yes. No, I told him that she was ready for her daddy to come home.
Q. Okay. What else did you tell [him] yesterday, when I came in the room?
[objection omitted]
Q. Do you recall talking to [the prosecutor] after I came in the room?
A. No.
Edwards’s equivocation provided a sufficient factual basis for the prosecutor’s questions, as inconsistency goes to the weight of the testimony rather than its sufficiency as evidence. See Jamison v. Barnes, 8 So.3d 238, 245 (¶ 17) (Miss.Ct.App.2008).
¶ 22. That is not to say that we condone the line of questioning. There is some merit to Archer’s claim that the prosecutor essentially offered unsworn testimony through his assertions on cross-examination. That was improper. See Foster v. State, 639 So.2d 1263, 1289 (Miss.1994). But Archer did not object at trial, and the failure to offer a contemporaneous objection waives this issue for appeal. See Caston v. State, 823 So.2d 473, 503 (¶ 102) (Miss.2002). “An appellate court is under no obligation to review an assignment of error when an objection was not made or when an objection was untimely.” Id.
¶ 23. Archer argues that we should consider this argument under plain error, which “is properly utilized for correcting obvious instances of injustice or misapplied law.” Smith v. State, 986 So.2d 290, 294 (¶ 10) (Miss.2008) (quotations omitted). However, the jury was properly instructed to base its verdict only on the evidence before it. Considering that, defense counsel’s opportunity to object, the relatively benign subject matter of the prosecutor’s statements, and Edwards’s subsequent equivocation, we find that the prosecutor’s questioning was not unfairly prejudicial and does not warrant review as plain error.
¶ 24. We find no reversible error in the cross-examination of Edwards.

B. Little Ricky Archer

¶ 25. Archer contends that the prosecutor’s cross-examination and arguments relating to Little Ricky’s testimony misled the jury. Little Ricky testified that both Abby and Betty had told him the abuse never happened. On cross, the prosecutor asked Little Ricky whether he had mentioned this when “first asked” during the interview. Little Ricky admitted he had not, but he explained he had been cut off by aggressive questioning from the State’s investigator. The prosecutor then *621 asked whether a Mr. Miller,[4] the defense attorney’s investigator, had told Little Ricky not to discuss the case with the prosecution. At this point, Archer objected. During a bench conference on the objection, the trial judge expressed concern that the prosecutor’s earlier question was misleading given that the prosecutor admitted Little Ricky had — later in the interview — given the whole substance of his in-court testimony. When the cross-examination recommenced, Little Ricky admitted someone had told him not to speak with anyone regarding the case, but he denied ever identifying this person as the defense investigator. Little Ricky testified he believed the appropriate time to come forward was the trial. He was equivocal about whether he had spoken to either of Archer’s prior defense attorneys.
¶ 26. Archer’s argument on appeal is that the prosecutor confused the jury by never clearly bringing out on cross-examination that, during the pretrial interview with the prosecutor, Little Ricky had eventually disclosed Abby’s denial. Instead, the prosecutor focused on Little Ricky’s failure to come forward until the trial. The prosecutor also argued repeatedly that Little Ricky had not come forward “until today,” implying that Little Ricky had not mentioned Abby’s denials during his interview with the prosecutor the day before (the first day of the trial). According to Archer, the prosecutor’s questioning and argument were confusing to the jury.
¶ 27. This issue is procedurally barred because Archer failed to object on these grounds to the prosecutor’s questions and arguments. Caston, 823 So.2d at 503 (¶ 102). If Archer felt the cross-examination was confusing or left a mistaken idea in the minds of the jury, he had the chance to clarify the testimony on redirect. He did not attempt do so. Again, we find that the error, if any, does not rise to the level of plain error.

C. Failure to Come Forward Arguments

¶28. Finally, Archer argues that the prosecutor committed reversible error by insinuating that Little Ricky and Latonya Edwards had a duty to come forward to the authorities with their exculpatory testimony. The prosecutor repeatedly contended that this made their testimony less credible. Again, Archer failed to object at trial and must travel, if at all, under plain error.
¶ 29. Archer’s first argument is that the trial court was required to make an initial bench determination of the reason for the witnesses’ silence before it could be used in the trial. However, all of the authorities offered are from the State of New York. Archer makes no effort to support this claim with Mississippi authority, nor does he argue for a change in Mississippi law. We cannot base our decision on foreign authority standing by itself, and thus Archer’s claim fails for a want of relevant authority. See M.R.A.P. 28(a)(6); Rhoda v. Weathers, 87 So.3d 1067, 1072 (¶ 22) (Miss.Ct.App.2011), rev’d on other grounds, 87 So.3d 1036 (Miss.2012) (“Rule 28 does not simply require a party to mention authority; the authority must be used to develop the argument in a meaningful way.”).
¶ 30. The only Mississippi authority cited by Archer is Hickson v. State, 697 So.2d 391 (Miss.1997), but that case does not hold that cross-examination on a failure to come forward with exculpatory evi *622 dence is always prohibited. That argument has been made before and rejected; this Court has interpreted Hickson only to “restrict impeachment of witnesses by silence to adequate cross-examination.” Estes v. State, 782 So.2d 1244, 1253 (¶¶ 19-20) (Miss.Ct.App.2000) (emphasis added). The cross-examination of Hickson’s wife was unfair not because it pointed out that she had failed to come forward, but because the jury was never informed of spousal privilege. Id.; Hickson, 697 So.2d at 398 n. 7.
¶ 31. Cross-examination on prior silence is not prohibited where it is fair and adequate. Powell v. State, 662 So.2d 1095, 1100 (Miss.1995); Estes, 782 So.2d at 1253 (¶ 20). We do not find the prosecutor’s arguments to be plain error because this is not an “obvious instance[ ] of injustice or misapplied law.” Smith, 986 So.2d at 294 (¶ 10). We conclude that this issue is procedurally barred.
4. Prosecutor’s Closing Argument
¶ 32. Archer challenges several statements made by the prosecutor in his closing argument.

A. Corroboration

¶ 33. Archer contends that the prosecutor erred in arguing to the jury that Abby’s testimony did not require corroboration to support a conviction. According to Archer, the prosecutor both misstated the law and overstepped his bounds by instructing the jury on the law.
¶ 34. Once again, Archer failed to object at trial, and this issue is barred as a result. Caston, 823 So.2d at 503 (¶ 102). Contemporaneous objections are required “so that the [trial] court may, when possible, correct the error with proper instructions to the jury.” Baker v. State, 327 So.2d 288, 292-93 (Miss.1976).
¶ 35. We have previously rejected Archer’s argument that Mississippi law requires corroboration to support a statutory rape conviction. His contention that the prosecutor misled the jury in stating otherwise is barred and without merit.
¶36. As to Archer’s second argument, we agree that “it is the province of the trial judge to announce the law to the jury.” Clemons v. State, 320 So.2d 368, 372 (Miss.1975). The jury was not instructed by the trial court one way or the other on the corroboration requirement. If the State desired such an instruction, it should have submitted it in writing for the court’s consideration. See URCCC 3.07. Nonetheless, no reversible error resulted because the prosecutor correctly stated the law and did not contradict the instructions of the court. See Harris v. State, 207 Miss. 241, 249, 42 So.2d 183, 185 (1949).
¶ 37. This issue is procedurally barred and without merit.

B. Failure to Testify

¶ 38. The prosecutor stated during his rebuttal closing argument that the testimony of Abby, Betty, and Claire was “unrebutted” and had not been impeached. According to Archer, since he was the only one who could have contradicted their testimony, this was an inferential comment on his decision not to testify and amounts to reversible error.
¶ 39. Archer did not object on these grounds at trial, and the issue is again procedurally barred on appeal.
¶ 40. Notwithstanding the procedural bar, we will address the merits of Archer’s claim. First of all, Archer’s assertion that he is the only one who could have rebutted the girls’ testimony is false, given that there were two other people present during the incidents involving Betty and *623 Claire. Second, Archer simply has the law wrong. He relies on Whigham v. State, 611 So.2d 988 (Miss.1992), a case that has been overruled. In Wright v. State, 958 So.2d 158, 164 (¶ 14) (Miss.2007), the Mississippi Supreme Court stated:
This Court has repeatedly held that attorneys on both sides are allowed wide latitude in their closing arguments and that there is an obvious difference between a comment on the defendant’s failure to testify and a comment on defendant’s failure to put on a credible defense.
The supreme court noted that its prior decisions to the contrary were based on a since-repealed Mississippi statute and a United States Supreme Court decision that had been abrogated by subsequent decisions of that court. Id. at 164-65 (¶¶ 16-20). The aberrant Mississippi eases (including Whigham) were overruled. Id. at 166 (¶ 21).
¶ 41. The Wright court retained the rule that a prosecutor may not argue that the defendant’s failure to testify is substantive evidence of his guilt, but it permitted the prosecution to “fairly re-sponde] to an argument of the defendant by adverting to [his] silence.” Id. at 166 (¶ 20) (quoting United States v. Robinson, 485 U.S. 25, 34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)). Arguments of the prosecutor must be “viewed in context, taking into consideration the circumstances of the case.” Curry v. State, 939 So.2d 785, 789 (¶ 13) (Miss.2006).
¶ 42. Here, the prosecutor’s comments were made during his rebuttal, in response to Archer’s attacks on the girls’ testimony. The argument accurately reflected the facts in evidence and was a fair response to Archer’s defense. This issue is procedurally barred and, notwithstanding the bar, without merit.

C. Abby’s Motive to Come Forward

¶ 43. Next, Archer contends the prosecutor committed reversible error by arguing that Abby had come forward to protect her baby sister, “Delores,” from Archer. The prosecutor was recalling Abby’s testimony to that effect.
¶44. Archer’s failure to object means that this issue can again only be considered, if at all, under plain error. He relies on West v. State, 485 So.2d 681, 689-90 (Miss.1985), a death penalty case that bears little resemblance to the one at bar. West was accused of raping and murdering a fifty-four-year-old woman. Several children witnessed him running from the scene of the crime, and it was apparent to the jury that one of them was afraid of the defendant. During his closing argument, the prosecutor insinuated that if West was not convicted, he would harm the children who had testified against him. The prosecutor began listing off the children’s names, stating “Caprice is still out there,” and so forth, drawing an objection. This, together with other misconduct and the heightened standard of review in death penalty cases, mandated reversal. Archer also cites another death penalty case, Lester v. State, 692 So.2d 755 (Miss.1997) (overruled on other grounds), where a defendant was accused of sexually abusing his daughter and beating her to death. The prosecutor contended that the only reason the defendant had not abused another daughter was that he had no access to the child since she was three months of age. This was found to be error, and Lester’s conviction and sentence were reversed on a finding of numerous other errors in the trial. Id. at 781, 802.
¶ 45. We find these cases in-apposite, as the comments did not result in an unfair trial. “It is well-settled that counsel is allowed considerable latitude in *624 the argument of cases and is limited not only to the facts presented in evidence, but also to deduction and conclusions he may reasonably draw therefrom, and the application of the law to the facts.” Sanders v. State, 801 So.2d 694, 704 (¶ 39) (Miss.2001) (citations and quotations omitted). “[WJhere the argument does not result in unjust prejudice against the accused as to result in a decision influenced by the prejudice so created, [a reviewing court] will find it harmless.” Id. (citations and quotations omitted).
¶ 46. It is readily apparent from the record that the prosecutor’s purpose was not to inflame the jury with irrelevant or otherwise inadmissible speculation. Instead, he was responding to Archer’s defense by reminding the jury of Abby’s testimony about why she had finally come forward. We do not find this unfairly prejudicial. This issue is procedurally barred and without merit.

D. Presumption of Innocence

¶ 47. During his closing argument, the prosecutor stated:
Now, we promised in the first part of this case, I said, Now, ya’ll, I want to make sure this defendant gets a fair trial, he was presumed innocent, and at that stage of the game he was. But now he’s not. He’s no longer presumed innocent, because the evidence against him as been laid out to take away that presumption of innocence, to show the light of day of what happened and who this defendant is and what he did to these children. It’s out for y’all to make a decision on this case.
¶ 48. In this instance, we agree with Archer that prosecutor’s remarks were improper. We found nearly identical comments to be error — albeit harmless — in McCoy v. State, 954 So.2d 479, 488 (¶ 29) (Miss.Ct.App.2007). The State was free to argue that it had overcome the presumption of innocence, but it was wrong to suggest the presumption no longer attached once the evidentiary portion of the trial was completed. Archer was presumed innocent until the jury decided the State had met its burden of proof beyond a reasonable doubt.
¶ 49. However, finding that the comments were error is not the end of our analysis. Because Archer did not object at trial, he must travel under plain error, which is, again, “properly utilized for correcting obvious instances of injustice or misapplied law.” Smith v. State, 986 So.2d 290, 294 (¶ 10) (Miss.2008) (quotations omitted).
¶ 50. It appears the prosecutor was trying to explain that the State had overcome the presumption of innocence, not deliberately attempting to mislead or confuse the jury. Archer’s failure to object prevented the trial court from explicitly correcting the prosecutor’s remarks, though defense counsel did use her own argument to repeatedly remind the jury that the burden of proof remained with the State. The trial court also properly instructed the jury on the nature of closing arguments, and it specifically instructed that the presumption of innocence “stays with the defendant throughout the trial.” Considering all of that, we do not find that the prosecutor’s comments were so unfairly prejudicial as to reach the level of plain error. This issue is likewise procedurally barred and without merit.
5. Other Bad Acts Evidence
¶ 51. Under this umbrella, Archer contends the trial court erred in allowing the testimony of Betty and Claire, who each testified that Archer had sex with them after they witnessed him having sex with Abby. According to Archer, this violated *625 Mississippi Rule of Evidence 404(b), which prohibits the use of other bad acts “to prove the character of a person in order to show that he acted in conformity therewith,” as well as Mississippi Rule of Evidence 403, which prohibits otherwise admissible evidence when its probative value is substantially outweighed by the danger of unfair prejudice.
¶52. The admission of evidence is within the discretion of the trial court and can only be reversed on appeal if that discretion has been abused. Eckman v. Moore, 876 So.2d 975, 984 (¶ 31) (Miss.2004). Even “[w]here such error is found, [an appellate court] will not reverse unless the error adversely affects a substantial right of a party.” Tate v. State, 912 So.2d 919, 926 (¶ 16) (Miss.2005) (quotations omitted).

A. Rule ⅛0⅛

¶ 53. “Usually, evidence of another crime or prior bad act is not admissible.” Simmons v. State, 813 So.2d 710, 716 (¶ 30) (Miss.2002). Rule 404(b) enumerates certain exceptions to that general rule: evidence of other bad acts may be admissible for other purposes “such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Another non-character purpose is to “tell the complete story so as not to confuse the jury.” Underwood v. State, 708 So.2d 18, 32 (¶ 41) (Miss.1998) (quotation omitted). Evidence of other bad acts is also admissible “where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences.” Id. (citation omitted).
¶ 54. Archer acknowledges this authority, but he nonetheless argues the jury did not need to hear that Betty and Claire had been raped. He contends the jury could instead have been instructed not to speculate why the other girls were present when Abby was raped. This argument is simply contrary to the law of this State. The prosecution has a “legitimate interest in telling a rational and coherent story of what happened.” Brown v. State, 483 So.2d 328, 330 (Miss.1986). The testimony of Betty and Claire’s rapes provided evidence of Archer’s motive and was needed for the jury to understand the girls’ demeanor on the stand and their reluctance to come forward.
¶ 55. Betty and Claire witnessed Abby being raped because they, too, were raped at the same time. This was simply too intertwined with the charges against Archer to be kept from the jury. We find no abuse of discretion in allowing their testimony.

B. Rule ⅛03

¶ 56. Archer contends, in the alternative, that Betty and Claire’s testimony was too prejudicial to be admitted under Rule 403, which states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Archer also faults the trial court for not making on-the-record findings under this rule.
¶ 57. All otherwise-admissible evidence must be filtered through Rule 403. Jones v. State, 920 So.2d 465, 476 (¶ 34) (Miss.2006). When the trial court admits other bad acts evidence under Rule 404(b), it should make an on-the-record Rule 403 finding that the probative value is not substantially outweighed by the danger of unfair prejudice. Tate, 912 So.2d at 926 *626 (¶ 16). However, even in 404(b) cases, “our review depends on the evidence and not the judge, and while a judge’s on-the-record analysis is recommended as it serves to fortify the judge’s position for pui’poses of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.” Jones, 920 So.2d at 476 (¶ 34). “It is inherent that nearly all evidence is prejudicial to a party in one way or another. The inquiry as it regards admissibility is whether that prejudice is unfair.” Abrams v. Marlin Firearms Co., 838 So.2d 975, 981 (¶ 22) (Miss.2003).
¶ 58. Archer’s allegation of unfair prejudice focuses on the necessity of defending against three allegations of sexual abuse when he was only on trial for one. He relies on Flowers v. State, 842 So.2d 531, 543 (¶ 35) (Miss.2003), where the supreme court reversed Flowers’s conviction for one murder after finding “a tactical scheme by the State to try Flowers for all four murders” committed during a single killing spree. The other murders were relevant, but the State “went too far” by introducing excessively detailed and often cumulative evidence relating to the other three victims. See id. at 543-550 (¶¶ 35-51). Evidence that went beyond what was necessary to tell the whole story of the killing spree was irrelevant under Rule 403. Id. at 550 (¶ 51).
¶ 59. In today’s case, we find that the prosecution did not introduce excessive evidence of the other rapes. Archer is correct that the prosecutor did occasionally lump the girls together in his closing arguments. For the most part, however, this was used for the legitimate purpose of explaining Archer’s motive for having sex with Abby in front of the other girls. The State did not go too far like it did in Flowers.
¶ 60. We find no abuse of discretion in the trial court’s admission of the other victims’ testimony.
6. Instruction on Unanimity
¶ 61. Archer argues that the trial court failed to instruct the jury that its verdict had to be unanimous. No objection was made on these grounds during the trial, nor was any additional instruction offered by Archer, perhaps because the court itself instructed the jury to that effect.
¶ 62. It is true that the verdict of the jury must be unanimous in a criminal trial, and the jury should be so instructed. See, e.g., Fulgham v. State, 46 So.3d 315, 324 (¶ 23) (Miss.2010). Reviewing all of the instructions given in this case, we are satisfied the jury was properly instructed. C-l instructed the jury that “[t]he verdict must represent the thoughtful judgment of each juror.... Each of you must decide this case for yourself.” It concluded: “All twelve of you must agree on a verdict before you can return it ... as the verdict of the jury.” C-2 stated that the jurors were not “to reveal to any person ... how the jury stands ... until after you have reached a unanimous verdict.” Moreover, the jury was polled after the verdict was read, and each juror confirmed that the verdict of the jury was his or her individual verdict.
¶ 63. This issue is both procedurally barred and without merit.
7. Merger; Double Jeopardy
¶ 64. Archer next contends that convictions for both fondling and statutory rape have essentially punished him twice for the same crime. For authority, he relies on Minor v. State, 62 So.3d 1002, 1004 (¶ 8) (Miss.Ct.App.2011), where this Court found that charges of sexual battery and gratification of lust merged when there was only proof of a single incident of *627 touching by the defendant. This was required because it was “impossible ... for Minor to have committed sexual battery without also having committed the crime of gratification of lust.” Id. The Constitution does not allow multiple punishments for the same offense; “[a] conviction can withstand a double-jeopardy analysis only if each offense contains an element not contained in the other.” Id. at 1004-1005 (¶ 9). “[T]he test ... is whether each provision requires proof of a fact which the other does not.” Graves v. State, 969 So.2d 845, 847 (¶ 9) (Miss.2007) (quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).
¶ 65. We need not address whether fondling and statutory rape merge because the charges did not stem from the same act or transaction. Abby testified that Archer touched her on the side of the road. He then drove to another, more secluded location, where he had sex with her. These are distinct acts separated by time and place. Moreover, there was evidence establishing several other instances of sexual intercourse during the time period alleged in the indictment.
¶ 66. Archer was not punished twice for the same act. This issue is without merit.
8. Ineffective Assistance of Counsel
¶ 67. Finally, Archer contends he received constitutionally ineffective assistance of counsel. He points only to trial counsel’s “failure to object to many of the errors alleged” that potentially waived issues for appeal. Archer does not provide further specificity or discussion.
¶ 68. Archer is represented by new counsel on appeal. Mississippi Rule of Appellate Procedure 22(b) provides:
Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.
The comment to Rule 22(b) specifically states that “claims of ineffective assistance of counsel for failure to object to evidence offered by the state or to argument by the state must be raised on direct appeal.” Id. Such claims can be fully apparent from the trial record. See Conners v. State, 92 So.3d 676, 686 (¶ 23) (Miss.2012). Moreover, Archer has been represented by new counsel since shortly after his conviction, and his appellate counsel raised the same issues of ineffective assistance in Archer’s motion for a new trial, presenting him an opportunity to introduce supporting evidence into the trial record. Consequently we find Archer’s ineffective assistance of counsel claim fully apparent from the record and ripe for consideration on direct appeal.
¶ 69. To prove ineffective assistance of counsel, Archer must show that (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Id. at 689. “Defense counsel is presumed competent.” Burns v. State, 813 So.2d 668, 673 (¶ 14) (Miss.2001). “[T]he defendant must overcome the presumption' that, under the circumstances, the challenged action might be considered sound trial strategy.” Id. (citations and quotations omitted).
¶ 70. “The failure of counsel to make certain objections may fall within the ambit of trial strategy, and therefore may not give rise to a claim for ineffective *628 assistance of counsel.” Nix v. State, 8 So.3d 141, 144 (¶ 13) (Miss.2009). Given Archer’s cursory treatment of this issue, we find that he has failed to meet his burden under Strickland. This issue is without merit.
¶ 71. THE JUDGMENT OF THE LE-FLORE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, STATUTORY RAPE, AND SENTENCE OF TWENTY YEARS WITH SIXTEEN YEARS TO SERVE AND FOUR YEARS OF POST-RELEASE SUPERVISION; AND COUNT II, FONDLING, AND SENTENCE OF TWO YEARS; WITH THE SENTENCES TO BE SERVED CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LE-FLORE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. CARLTON, J., CONCURS IN RESULT ONLY.

. This Court uses pseudonyms to protect the confidentiality of minors in sexual abuse cases.

. It is not clear whether Betty and Claire are Archer’s natural children, but they testified he was regarded as a father or stepfather.

. Immediately before the trial began, the prosecutor objected to Edwards and Little Ricky testifying, contending they were surprise witnesses. The objection was never ruled upon and appears to have been abandoned.

. From elsewhere in the record, we know the investigator's full name is Wayne Miller, but it was not mentioned before the jury.