# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01288-COA

**TRAVIS RAY CONNER A/K/A TRAVIS CONNER**                                           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

DATE OF JUDGMENT:                    10/06/2022
TRIAL JUDGE:                         HON. CHARLES W. WRIGHT JR.
COURT FROM WHICH APPEALED:           LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF STATE PUBLIC DEFENDER
                                     BY: ZAKIA BUTLER CHAMBERLAIN
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:                   KASSIE ANN COLEMAN
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED - 08/20/2024
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Travis Conner was convicted by a Lauderdale County Circuit Court jury of first-degree murder. He appeals his conviction, claiming only that the verdict was against the overwhelming weight of the evidence. After viewing the evidence in the light most favorable to the jury's verdict, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2.     On October 7, 2017, police were called to 1802 28th Avenue in Meridian, Mississippi, in response to a shooting. When they arrived, they found Donnikia Clark suffering from a gunshot wound to his head. Clark died from his injuries. The home located at the address

where the victim died was owned by Betty Reed. She was in her house when she heard the gunshot, ran to her front yard, and discovered Clark lying on the ground. She told the first officers on the scene, "[O]h my God, my son did it." Reed also identified her son as Travis Conner.

¶3. The police began their investigation and immediately began looking for Conner. At the scene, the police took photographs and collected one 9mm "shell casing" next to the body. After being arrested, Travis Conner was indicted by a Lauderdale County grand jury for one count of deliberate design (first-degree) murder pursuant to Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2017). His trial occurred during October 3-5, 2022.

¶4. The State called former Meridian police officer Ronald Turner as its first witness. He testified he was dispatched to 1802 28th Avenue in Meridian and was the first officer on the scene of the shooting. Upon arrival, he noticed a male, later identified as Clark, on the ground with a gunshot wound to his head. Reed, the owner of the house at that location, was doing CPR. Reed told Turner, "[O]h my God. My son did it." Reed's statement was heard on body camera footage, offered into evidence, and played for the jury. Several police officers also arrived, obviously looking for the shooter.

¶5. The State called another former police officer, Sidney Coleman, who was with the Meridian Police Department. Coleman testified he, too, saw Reed performing CPR on Clark and heard her say, "My son did it." He learned that her son was Conner and that he also lived at the home. Coleman testified he learned that Conner had driven away from the scene in a blue Dodge Durango. He saw and noted for collection by a detective the 9mm shell casing

2

at the scene.

¶6.     The State's next witness was Lionel Craig, who testified he had been friends with Reed since they used to work together. He was over at her house that day helping her clean out the "car porch." Craig testified he noticed Clark "approach" and speak to Conner who was in the blue Dodge Durango. Craig could not hear the content of the conversation, but Conner "jumped out of the vehicle" and said "different angry things" to Clark. Craig testified Conner shot Clark and immediately left the area after the shooting. Craig admitted on cross-examination that he fled the scene after the murder, was arrested, and initially jailed over this incident, but he later gave a statement to police.[1]

¶7.     During cross-examination, when Craig was asked if he was wearing his glasses he initially testified, "I pulled them off when I seen what I just told." Later, when counsel for Conner was seeking clarification whether Craig was or was not wearing glasses at the time he witnessed the shooting, he testified, "I ain't tell them that," referring to the jury. Craig added on cross-examination that Conner said to Clark, "Don't F**k with me. God D**n, I told you." After those words, Craig testified he heard the gunshot.

¶8.     The State then called Betty Reed, who testified that on the day of the shooting, she lived at 1802 28th Avenue with her son, Travis Conner. She explained that she and Craig were cleaning areas of her home that day. She also confirmed she owned a blue Dodge Durango that she shared with Conner. Reed testified they were having "a good day" when

---

[1]  Conner's argument on appeal is that Craig was an "unreliable and unreasonable" witness at trial and should not be believed. Craig was certainly combative in his testimony. This argument will be addressed in the analysis section of this opinion.

"all of a sudden," she heard "arguing" and then a "bullet shot." She testified she immediately "ran to the front lawn" and found a male on the ground with a gunshot wound to his head. She began CPR. At first, she denied that Conner took her Dodge Durango without permission after the shooting because he was going "to a funeral," but later, when pressed about her police statement, she admitted that he "just took off in it."

¶9. The State called Detective Thomas Abate who was with the Meridian Police Department at the time of the shooting. Detective Abate testified he collected a 9mm shell casing in the front lawn where Clark was shot and also searched Conner's bedroom.

¶10. The State called Lieutenant Kevin Boyd next. Boyd worked for the Meridian Police Department as a criminal investigator at the time of the shooting. He was involved in the execution of the search warrant at the home where Conner and his mother lived. In particular, he testified about the search he conducted of Conner's bedroom. First, he found Conner's wallet containing his identification. Boyd testified that he collected a box of Fiocchi ammunition on Conner's table in his bedroom and a 9mm magazine used in a 9mm handgun. There, he found another 9mm shell casing.[2] Both 9mm shell casings—the one from the area where Clark was shot and the one from Conner's bedroom—were sent to the Mississippi Forensics Laboratory for comparison testing.

¶11. The State called Dr. Mark LeVaughn, the associate state medical examiner, to testify as an expert in the field of forensic pathology. Dr. LeVaughn did not perform the actual autopsy on Clark but reviewed the entire case file, as each case goes through a consultation

---

[2] Investigator Boyd testified that by "shell casing" he meant a spent bullet. In other words, the projectile had been fired, and the only thing left was the casing.

4

process within the office.  Dr. LeVaughn testified that Clark died from a single distant gunshot wound to the head.

¶12.  The State's final witness was Mark Boackle.  Boackle was employed at the Mississippi Forensics Laboratory as a forensic scientist specializing in firearms examination. Boackle was tendered and accepted as an expert in firearms and toolmark analysis without objection from Conner.   Boackle testified he could "compare two or more cartridge cases to each other to determine if they were fired from the same gun."   Boackle explained that when shell casings or cartridge cases are fired from a weapon, the "primer or the breech face has marks from the gun."  He added the "breech face will also leave dents and scratches on the cartridge case."  Boackle explained that he used a comparison microscope to examine the two shell casings that had been submitted to the laboratory for examination.  He compared the shell casing found by the victim and the one found in Conner's bedroom.  The shell casing next to the victim was a 9mm Fiocchi-manufactured round, and the one in the bedroom was a 9mm Federal-manufactured round.  Boackle testified that he "determined" that the "two cartridge cases were fired in the same gun based off individual characteristics."

¶13.  The State rested, and the defense called no witnesses.  After being informed on the law and hearing closing arguments from the parties, the jury deliberated and returned a verdict of guilty of deliberate design (first-degree) murder.  The trial court sentenced Conner to life imprisonment in the Mississippi Department of Corrections.[3]  Conner appeals, arguing

---

[3] On October 11, 2022, Conner filed a "Motion for Judgment of Acquittal, or, in the Alternative, Motion for a New Trial[.]"  The judge denied the motion on December 12, 2022.

Craig was such an "unreliable" witness that the verdict was contrary to the overwhelming weight of the evidence.

## STANDARD OF REVIEW

¶14. Our standard of review when the weight of the evidence is challenged on appeal is well established. "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Green v. State*, 312 So. 3d 1214, 1217 (¶12) (Miss. Ct. App. 2021) (quoting *Baker v. State*, 802 So. 2d 77, 81 (¶14) (Miss. 2001)). In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence that supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. *Baker*, 802 So. 2d at 81 (¶14).

## ANALYSIS

¶15. In this appeal, Conner argues only one issue—that the evidence was against the overwhelming weight of the evidence. In support of that argument, Conner argues that Craig's testimony was "self-serving, unreliable and unreasonable." Due to Craig's testimony being "self-serving, unreliable and unreasonable," as the argument goes, the "verdict was against the overwhelming weight of the evidence."

¶16. First, Conner cites no authority to this Court concerning his argument that Craig's lack of credibility requires a reversal of his conviction. Mississippi Rule of Appellate Procedure 28(a)(7) states: "The argument shall contain the contentions of appellant with respect to the

6

issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016). This rule "does not simply require a party to mention authority; the authority must be used to **develop the argument in a meaningful way**." *Id.* (emphasis added) (quoting *Archer v. State*, 118 So. 3d 612, 621 (¶29) (Miss. Ct. App. 2012)). The Mississippi Supreme Court has held that "in the absence of meaningful argument and citation of authority, [we] generally will not consider the assignment of error." *Patton v. State*, 109 So. 3d 66, 75 (¶22) (Miss. 2012) (citing *Randolph v. State*, 852 So. 2d 547, 558 (Miss. 2002)). Despite the procedural bar, we will address the one issue presented to this Court on appeal.

¶17. Before we do so, it is important to note that "[a]s an appellate court, we are not permitted to sit as the thirteenth juror and assume the role of juror on appeal." *Green*, 312 So. 3d at 1218 (¶18) (citing *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017)). "[I]t is the function of the jury to pass upon the weight and worth of the evidence and to determine the credibility and veracity of the witnesses." *Id.* (citing *Jones v. State*, 326 So. 3d 521, 529 (¶43) (Miss. Ct. App. 2021)). We do not "assume[ ] the role of juror on appeal. We do not reweigh evidence. We do not assess witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Little*, 233 So. 3d at 289 (¶1). Instead, "[w]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Id.* at 292 (¶20) (citing *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980); *Lenoir v. State*, 222 So. 3d 273, 278 (Miss. 2017)).

¶18. What did the jury hear during Conner's trial? Craig testified before the jury and was subjected to an extensive cross-examination. Craig's testimony was short-answered, and he was obviously combative and resented being asked questions by the attorneys. He repeatedly stated that he had already told his story. But he did say that he saw Conner shoot Clark. He did say Conner and Clark exchanged words, and he (Craig) heard arguing prior to the shooting. Craig testified that although he could not make out what was said, he heard Conner cursing at Clark, and then Conner jumped out of his (Conner's) vehicle and shot Clark. In essence, Craig testified as to what he saw and heard on the day of the shooting. Craig's credibility was attacked on cross-examination and in closing arguments. However, Reed—Conner's mother—confirmed Craig's testimony about hearing an argument before she, too, heard a single gunshot. Reed went toward the sound of the gunshot and found the victim in her front yard and her vehicle gone. She told the police, upon arrival, that her "son did it."

¶19. Further, Dr. LeVaughn testified the victim had a single gunshot wound to the head, which corroborated both Reed's and Craig's testimony. A single shell casing was found and collected near the victim, which also corroborated both Reed and Craig. That shell casing by Clark's body was 9mm in size. A search of Conner's bedroom revealed more 9mm ammunition but, more importantly, another 9mm shell casing that had been fired from the same weapon used to kill Clark. Boackle, from the crime lab, testified that the shell casings—one in Conner's bedroom and one by the victim—were fired from the same gun. We find that Craig's testimony was not so "implausible" or "substantially impeached" as to

8

be "unworthy of belief." There was ample evidence for a jury to find Craig's testimony reliable and credible and to find Conner guilty of deliberate design (first-degree) murder.

## CONCLUSION

¶20. The jury heard the evidence and judged the credibility of the eyewitnesses' testimony that Conner shot and killed Clark. After a review of the record, we find the verdict was not against the overwhelming weight of the evidence of first-degree murder, and allowing the verdict to stand would not "sanction an unconscionable injustice." We affirm Conner's conviction and sentence.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**